## RECORD NO. 14-7245

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## NICHOLAS RAGIN,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

_____

## BRIEF OF APPELLANT

_____

**Matthew G. Pruden
TIN, FULTON, WALKER
 & OWEN, PLLC
301 East Park Avenue
Charlotte, NC  28203
(704) 338-1220**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street  ♦  P.O. Box 1460 (23218)  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ......................................................... iii

STATEMENT OF JURISDICTION................................................1

ISSUE ON APPEAL...................................................................1

STATEMENT OF THE CASE ....................................................1

SUMMARY OF THE ARGUMENT ............................................7

ARGUMENT ...........................................................................8

THE DISTRICT COURT ERRED IN DENYING MR. RAGIN'S §
2255 MOTION ON THE GROUND THAT HIS TRIAL COUNSEL
WAS INEFFECTIVE FOR FALLING ASLEEP DURING TRIAL .............8

I.    STANDARD OF REVIEW.................................................8

II.   DISCUSSION ................................................................8

    A.   The District Court Should Have Analyzed Mr. Ragin's
         Claim Under *United States v. Cronic* .......................8

        1.   The Second, Fifth and Ninth Circuits have
             presumed that defendants were prejudiced where
             their trial counsel slept during trial................................10

        2.   The district court erroneously failed to presume
             prejudice ......................................................15

    B.   The District Court Erroneously Considered "Facts" That
         Were Based On Speculation And Not Part Of The
         Evidence In Holding That Mr. Ragin Failed To Show
         That He Received Ineffective Assistance Of Counsel.............19

CONCLUSION ...................................................................................20

REQUEST FOR ORAL ARGUMENT ...............................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s):</u>

<u>Cases</u>:

*Burdine v. Johnson,*
    262 F.3d 336 (5th Cir. 2001) ......................................................10, 11, 13, 16

*Javor v. United States,*
    724 F.2d 831 (9th Cir. 1984) ......................................................12, 13, 14, 17

*Muniz v. Smith,*
    647 F.3d 619 (6th Cir. 2011) .................................................................17, 18

*Powell v. Alabama,*
    287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 2d 158 (1932) ........................................8

*Strickland v. Washington,*
    466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) ...................... *passim*

*Tippins v. Walker,*
    77 F.3d. 682 (1996) ........................................................................11, 12, 17

*United States v. Cronic,*
    466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) ...................... *passim*

*United States v. Gouveia,*
    467 U.S. 180, 104 S. Ct. 2292, 81 L. Ed. 2d 146 (1984) .............................11

*United States v. Howard,*
    309 F. App'x 760 (4th Cir. 2009), *cert. denied*, 58 U.S. 830 (2009) ..............2

*United States v. Poindexter,*
    492 F.3d 263 (4th Cir. 2007) ...............................................................8

*United States v. Russell,*
    205 F.3d 768 (5th Cir. 2000) ...........................................................13, 14, 17

*United States v. Stevenson*,
  396 F.3d 538 (4th Cir. 2005) ..........................................................8

*United States v. Taylor*,
  933 F.2d 307 (5th Cir. 1991) ........................................................11

**Statutes:**

18 U.S.C. § 371 ..................................................................................1

18 U.S.C. § 3231 ................................................................................1

21 U.S.C. § 841 ..................................................................................1

21 U.S.C. § 846 ..................................................................................1

21 U.S.C. § 861 ..................................................................................1

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 2253 ................................................................................1

28 U.S.C. § 2255 ..................................................................... *passim*

**Constitutional Provision:**

U.S. Const. amend VI ............................................................. *passim*

**Rule:**

Fed. R. App. P. 34 ............................................................................20

**STATEMENT OF JURISDICTION**

The United States District Court for the Western District of North Carolina had original jurisdiction pursuant to 18 U.S.C. § 3231 because this was a criminal case alleging violations of 18 U.S.C. § 371, 21 U.S.C. §§ 841, 846, and 861. The United States District Court for the Western District of North Carolina then had jurisdiction based on Mr. Ragin filing a motion pursuant to 28 U.S.C. § 2255 there. On appeal, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.

**ISSUE ON APPEAL**

WHETHER THE DISTRICT COURT ERRED IN DENYING MR. RAGIN'S § 2255 MOTION ON THE GROUND THAT HIS TRIAL COUNSEL WAS INEFFECTIVE FOR FALLING ASLEEP DURING TRIAL.

**STATEMENT OF THE CASE**

Nicholas Ragin was charged in 2004 in a bill of indictment (and later in 2005 in a superseding bill of indictment) filed in the United States District Court for the Western District of North Carolina with conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371 (Count One) and conspiracy to possess with intent to distribute at least 50 grams of cocaine and to employ, hire, use, persuade, induce, entice and coerce minors to violate Chapter 13 of Title 21 of the United States Code, all in violation of 21 U.S.C. §§ 841, 846, and 861 (Count Thirteen). J.A. 3, 7, 228. On October 21, 2004, Attorney Nikita Mackey was appointed to represent Mr. Ragin. J.A. 4.

1

Mr. Ragin, along with three co-defendants, proceeded to trial on April 3, 2006 with Mr. Mackey as his legal counsel.  J.A. 9, 229.  On April 21, 2013, a jury found him guilty on both counts with which he was charged.  J.A. 11.  On January 18, 2007, the district court sentenced him to 360 months in prison on Count Thirteen and 60 months in prison on Count One to run concurrently with the sentence for Count Thirteen.  J.A. 12.  Mr. Ragin appealed the judgment, and this Court affirmed the judgment on January 29, 2009.  *United States v. Howard*, 309 F. App'x 760 (4ᵗʰ Cir. 2009), *cert. denied*, 58 U.S. 830 (2009).  Mr. Ragin then filed a petition for writ of *certiorari*, which was denied on October 14, 2009.

On October 1, 2010, Mr. Ragin filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 raising several claims, including the claim that he received ineffective assistance of counsel because his attorney, Mr. Mackey, slept during his trial.  J.A. 25-36.  The district court ordered an evidentiary hearing to address that claim.  J.A. 21.

The evidentiary hearing was first held on May 12, 2014.  J.A. 22.  Mr. Ragin called three witnesses—Peter Adolf, Richard Culler, and Pamela Vernon—and testified in his own behalf.  The government called Special Agent Terrell Tadeo.  The district court held the evidentiary hearing open so that the government could attempt to serve a subpoena on Mr. Mackey.  J.A. 186.  The evidentiary hearing

2

resumed on June 2, 2014, at which time the government called Mr. Mackey to testify.

Mr. Adolf, who represented one of Mr. Ragin's co-defendants at trial, testified the he noticed Mr. Mackey sleeping on one occasion.  J.A. 131.  He explained that the government was presenting evidence, and when government counsel approached Mr. Mackey to show him an exhibit she intended to present, Mr. Mackey did not move when she attempted to show it to him.  J.A. 131-32.  Instead, he sat in his chair "leaning back … with his left elbow in his left thigh … and sort of with his chin resting on his fist…."  J.A. 132.  As everyone waited for Mr. Mackey to acknowledge government counsel, the court tried to get his attention by leaning into the microphone and saying "Mr. Mackey" very loudly.  J.A. 132.  Mr. Mackey then "jumped up and sort of looked around and was licking his lips and moving his mouth and looked sort of confused and looked all over the room except at [government counsel].  And after a few seconds, he saw her standing there and looked at the document."  J.A. 133.

Mr. Culler, who represented another co-defendant at trial, testified that he witnessed Mr. Mackey sleeping.  J.A. 145-46.  According to Mr. Culler, Mr. Mackey's head was down on his arm and he was "breathing very regularly as if he was sleeping."  J.A. 145-46.  He also recalled stating to Mr. Adolf that Mr. Mackey

was "asleep again," thus indicating that he witnessed Mr. Mackey sleeping on at least one other occasion.  J.A. 145.

Ms. Vernon was a juror who sat through the entire trial and was positioned directly across the courtroom from Mr. Ragin and Mr. Mackey.  J.A. 153.  She testified that she saw Mr. Mackey sleeping "frequently."  J.A. 153.  When asked to describe his appearance during those times, she said that he appeared "[t]otally dozed off" and had "his hand on the table and his head down and did not appear to be alert at all."  J.A. 154.  She said she noticed him sleeping "almost every day" during the trial, and it occurred "in the morning and in the afternoon."  J.A. 154-55. She estimated that he may have slept for at least 30 minutes on occasion.  J.A. 55.  When Mr. Mackey was called upon during the trial, Mr. Ragin "would have to punch him … or kind of roused him."  J.A. 155-56.  That occurred almost daily.  J.A. 156.  Other jurors commented on his sleeping in the jury room.  J.A. 155.

Mr. Ragin testified that he saw Mr. Mackey sleep about ten to twenty times during the trial for periods of five to ten minutes at a time.   J.A. 160.  He said that he had to nudge Mr. Mackey on several occasions when he failed to respond to testimony presented at trial.  J.A. 160.  As he sat next to Mr. Mackey during the trial, Mr. Ragin heard him snoring and observed his eyes closed.  J.A. 161.  On at least one occasion, Mr. Mackey asked Mr. Ragin what he missed.  J.A. 162.

Mr. Ragin identified certain points in the trial where he recalled Mr. Mackey sleeping. J.A. 162-65. Several times, Mr. Mackey slept while evidence that directly implicated Mr. Ragin was presented. J.A. 163-65. He also slept when other government evidence was being presented. J.A. 163-65. Mr. Ragin identified transcript pages showing testimony of Crystal Chumley, Catherine Wills, Eugene Lewis, Keshia Burris, and Special Agent Terrell Tadeo, and testified that he recalled Mr. Mackey sleeping while that testimony was presented. J.A. 164-65. He also testified that the transcript pages he identified did not cover all of the testimony that was offered while Mr. Mackey was sleeping, and that Mr. Mackey slept while other witnesses testified. J.A. 164-65.

Of the trial transcript pages Mr. Ragin identified, page 1618 contained testimony consisting of speculation regarding Mr. Ragin's involvement in the conspiracy, and Mr. Mackey did not object to it. (Def. Exhibit 1-D.) Page 1635 contained testimony where the witness speculated that Mr. Ragin beat a woman, and to which Mr. Mackey did not object. (Def. Exhibit 1-H.) Page 1651 contained testimony where the witness speculated that Mr. Ragin sold drugs that belonged to a co-defendant, and Mr. Mackey did not object to it. (Def. Exhibit 1-I.) Transcript pages 2878-79 of the transcript showed Mr. Mackey cross-examining Special Agent Tadeo and attributing testimony to Special Agent Tadeo that did not take place. As a result, the government objected and the court held a side bar conference. During

the side bar, the court admonished Mr. Mackey for misquoting testimony and instructed him to "listen to the testimony." (Def. Exhibits 1-T and 2.) J.A. 164-65.

The government called Special Agent Tadeo and Mr. Mackey as witnesses. Special Agent Tadeo testified that he saw Mr. Mackey "nod off" on at least one, but possibly two occasions. J.A. 178-79. He described "nodding off" as "kind of eyes closed, head dropping" and "struggling to stay awake." J.A. 179. He distinguished it from "outright sleeping." J.A. 179. He further testified that during the trial, he mostly paid attention to the witnesses who were testifying directly in front of him. J.A. 182-83.

Mr. Mackey did not directly answer "yes" or "no" when asked during the evidentiary hearing whether he slept during the trial. He indicated that he had difficulty recalling specific details about the trial and stated that he would rely on the record to provide the answer to the question. J.A. 221. He speculated that if he were sleeping, the record would likely reflect it. J.A. 221.

On August 19, 2014, the district court denied and dismissed Mr. Ragin's motion and granted summary judgment in favor of the government as to other issues that Mr. Ragin raised in his motion. J.A. 228-243. The district court also denied a certificate of appealability. J.A. 243. This Court, however, granted a certificate of appealability on June 1, 2015.

## SUMMARY OF THE ARGUMENT

The district court erred in denying Mr. Ragin's § 2255 motion. There was strong evidence that Mr. Ragin's attorney slept during substantial portions of his trial. A juror who sat through the entire trial testified at the evidentiary hearing that she saw Mr. Ragin's attorney sleeping on numerous occasions while the government presented evidence, sometimes for as long as 30 minutes. Two attorneys who represented co-defendants at trial testified that they saw his attorney sleeping. One of the government's witnesses even testified that he saw Mr. Mackey "nodding off" during the trial.

An attorney's performance is clearly deficient where he or she sleeps during a trial in which he or she is representing a criminal defendant. Here, prejudice should be presumed as it was in similar cases out of the Second, Fifth, and Ninth Circuits. The district court erroneously declined to presume prejudice. Thus, it erred in concluding that Mr. Ragin did not receive ineffective assistance of counsel and, consequently, in denying his motion.

## ARGUMENT

THE DISTRICT COURT ERRED IN DENYING MR. RAGIN'S § 2255
MOTION ON THE GROUND THAT HIS TRIAL COUNSEL WAS
INEFFECTIVE FOR FALLING ASLEEP DURING TRIAL.

### I.     STANDARD OF REVIEW

On appeal from the denial of a § 2255 motion, this Court reviews *de novo* a

district court's legal conclusions.  *United States v. Poindexter*, 492 F.3d 263 (4th

Cir. 2007).  A district court's findings of fact are reviewed for clear error.  *United*

*States v. Stevenson*, 396 F.3d 538 (4th Cir. 2005).

### II.     DISCUSSION

#### A.     The District Court Should Have Analyzed Mr. Ragin's Claim Under *United States v. Cronic*.

A criminal defendant "requires the guiding hands of counsel in every step of

the proceedings against him."  *Powell v. Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55,

64, 77 L. Ed. 2d 158 (1932).  Courts must generally follow the two-part inquiry set

forth in *Strickland v. Washington*, 466 U.S. 668, 696, 104 S. Ct. 2052, 2069, 80 L.

Ed. 2d 674 (1984) to determine whether a defendant received effective assistance

of counsel.  Under *Strickland*, a defendant claiming ineffective assistance of

counsel must show that (1) his attorney's conduct "fell below an objective standard

of reasonableness," and (2) his attorney's incompetence prejudiced the defendant.

*Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064.  The Supreme Court noted,

8

however, that, "[i]in certain Sixth Amendment contexts, prejudice is presumed." *Id*. at 692, 104 S. Ct. at 2067.

The district court applied the wrong analysis in determining whether Mr. Ragin received ineffective assistance of counsel. Based on the evidence presented, it should have presumed prejudice and found that Mr. Ragin's trial counsel was ineffective for falling asleep during his trial.

In *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984) the Supreme Court identified "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 104 S. Ct. at 2046. The Court discussed those circumstances as follows:

> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

*Id*. at 659, 104 S. Ct. at 2047.

Here, Mr. Ragin's counsel failed "to subject the prosecution's case to meaningful adversarial testing" by sleeping during trial. Therefore, under *Cronic*, Mr. Ragin was denied his Sixth Amendment right to effective assistance of counsel.

For the reasons discussed below, the district court should have analyzed this case under *Cronic*.

> **1.    The Second, Fifth and Ninth Circuits have presumed that defendants were prejudiced where their trial counsel slept during trial.**

At least three Circuits have addressed the issue of whether prejudice is presumed where counsel sleeps during his or her client's trial.  In *Burdine v. Johnson*, 262 F.3d 336 (5th Cir. 2001), the Fifth Circuit concluded that *Cronic* controls the Court's inquiry into whether the defendant was denied his Sixth Amendment right to counsel where there is "credible evidence that defense counsel slept as evidence was being introduced against a defendant."  *Burdine*, 262 F.3d at 338.  The Fifth Circuit held that, under such circumstances, a "defendant has been denied counsel at a critical stage of his trial" and "the Supreme Court's Sixth Amendment jurisprudence compels the presumption that counsel's unconsciousness prejudiced the defendant."  *Id*.

In *Burdine*, the state argued that because the defendant could not "demonstrate precisely when [his trial counsel] slept during his trial, he [could not] prove that [his trial counsel] slept during critical stages of his criminal proceeding."  *Id*. at 347.  The Fifth Circuit countered that, "[t]o justify a particular stage as 'critical,' the Court has not required the defendant to explain how having counsel would have altered the outcome of the case.  Rather, the Court has looked to

whether 'the substantial rights of a defendant may be affected' during that type of proceeding." *Id.* (quoting *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991)). The Court then cited several cases, including *United States v. Gouveia*, 467 U.S. 180, 189, 104 S. Ct. 2292, 2298, 81 L. Ed. 2d 146 (1984), in which it was suggested "that a proceeding is critical when the accused is confronted by the legal procedural system or the expertise of a state adversary[.]" *Id.* The Court further explained that where the defendant's "counsel was unconscious, and hence absent, repeatedly throughout the guilt-innocence phase of [his] trial as evidence was being adduced against him," he was consequently absent at a "critical stage." *Id.* at 349. Therefore, the Court determined that trial counsel's sleeping "during portions of [the] trial on the merits, in particular during the guilt-innocence phase when the … prosecutor was presenting evidence," eliminated the "need to attempt to further scrutinize the record." *Id.* (internal quotations omitted). The Court remarked that "[u]nconscious counsel does not analyze, object, listen or in any way exercise judgment on behalf of a client…." *Id.* As such, the Court concluded that, "[w]hen we have no basis for assuming that counsel exercised judgment on behalf of his client during critical stages of trial, we have insufficient basis for trusting the fairness of that trial and consequently must presume prejudice." *Id.*

The Second Circuit recognized in *Tippins v. Walker*, 77 F.3d 682 (1996) that "if counsel sleeps, the ordinary tools for identifying prejudice are unavailable.

The errors and lost opportunities may not be visible in the record," thus making the "traditional *Strickland* analysis" misguided. *Tippins*, 77 F.3d at 686. As the Court pointed out, "the buried assumption in our *Strickland* cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse. But that is an assumption we cannot make when counsel is unconscious at critical times." *Id*. at 657.

The *Tippins* Court did not find it necessary for the defendant to present "specific attorney errors resulting in prejudice," instead concluding that the defendant suffered prejudice if, "at critical times, [he] had no counsel to sort out what initiatives were open." *Id*. Determining that to be the case where the defendant's trial counsel slept on several occasions while evidence against him was presented, the Court held that the defendant "was deprived of effective assistance of counsel … in violation of his Sixth Amendment right to counsel…." *Id*. at 690.

The Ninth Circuit has also held that where a defendant's trial counsel "sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary." *Javor v. United States*, 724 F.2d 831, 833 (9th Cir. 1984). The Court explained that "when a defendant is tried in the partial absence of counsel, he is prejudiced as a matter of law." *Id*. at 834. That is because

12

an attorney and client need to confer about the testimony or evidence adduced at trial and together evaluate its impact…. Moreover, a trial attorney must be present and attentive in order to adequately test the credibility of witnesses on cross examination, a matter of constitutional importance.

*Id*. The Court further explained that "an inquiry into the question of prejudice would require unguided speculation and would not be susceptible to intelligent, even handed application because an attorney's absence prejudices a defendant more by what was not done than what was done." *Id*. at 835 (internal quotations omitted).

*United States v. Russell*, 205 F.3d 768 (5th Cir. 2000), a case that helped form the Fifth Circuit's opinion in *Burdine*, is also instructive. While the case did not involve a sleeping attorney, it involved an attorney who was absent from his client's trial for approximately two days due to illness. *Russell*, 205 F.3d at 769-70. During his absence, no witness testimony directly implicated the defendant. *Id*. at 770. Instead, the government called only witnesses who testified against co-defendants charged in the same conspiracy. *Id*. At the conclusion of the trial, the defendant was found guilty of conspiracy to possess with intent to distribute controlled substances and conspiracy to launder money. *Id*. at 772. The defendant later filed a § 2255 motion alleging that his Sixth Amendment rights were violated when evidence was presented at trial during his trial counsel's absence. *Id*. at 769.

13

In reviewing whether the defendant's § 2255 motion should have been granted, the Fifth Circuit noted:

> Where conspiracy is at issue, it is more difficult to draw the line where directly inculpatory evidence ends and indirectly inculpatory evidence begins. Evidence relevant to the establishment of the same conspiracy with which any conspirator is charged is likely to be relevant as to any other co-conspirator. Furthermore, any evidence with respect to a co-conspirator that contributes to the establishment of an element of the conspiracy increases the perception that the other alleged participants are also guilty.

*Id*. at 772. The Court found it "unacceptable" that the defendant was "without counsel as the probability of his guilt increased during the government's presentation of evidence against his co-conspirators." *Id*. As the Court explained, "The adversary process becomes unreliable when no attorney is present to keep the taint of conspiracy from spreading to the client." *Id*. As such, the Court held that, under *Cronic*, "no specific showing of prejudice" was required and reversed the defendant's conviction. *Id*.

*Russell* is particularly apt because, as the Ninth Circuit stated in *Javor*, "unconscious or sleeping counsel is equivalent to no counsel at all." *Javor*, 724 F.2d at 834. Hence, the Fifth Circuit's analysis in *Russell* is applicable here, as there can be no distinction between a counsel who is physically absent and one who is asleep or unconscious.

14

### 2. *The district court erroneously failed to presume prejudice.*

Based on the foregoing, *Cronic* should have controlled the district court's inquiry, and the court should have held that Mr. Ragin was deprived of effective assistance of counsel in violation of the Sixth Amendment.[1]  There can be no dispute that a trial counsel's sleeping during trial constitutes deficient performance. It is clear from the evidence that his trial counsel slept at critical times during the trial, as he was seen sleeping while evidence was presented against Mr. Ragin and his co-conspirators.  Ms. Vernon's testimony as to that fact is most persuasive. She was in an excellent position to view Mr. Ragin and his trial counsel and had no interest in the outcome of the proceedings.  That she followed the court's instructions and rendered a verdict based on the facts in evidence are irrelevant, as sleeping counsel cannot challenge the evidence on which the verdict is based. She and the other jurors could only consider evidence that was not subject to "meaningful adversarial testing" during deliberations.  *See Cronic, supra*.  Had Mr. Ragin's lawyer remained awake throughout the trial, Ms. Vernon and the other jurors may have had to consider challenges to the evidence that led to different findings of facts; facts that would have supported a different verdict.

---

[1] The application of *Cronic* does not necessarily supplant or contradict the *Strickland* inquiry, but when it is determined that the defendant was prejudiced based on the application of *Cronic*, the second prong of *Strickland* is satisfied.

The evidence presented at the evidentiary hearing also showed that Mr. Mackey slept for substantial portions of the trial.  Again, Ms. Vernon's testimony as to that fact is most persuasive.  While she was the only witness other than Mr. Ragin who described the number of times and length of those times that Mr. Mackey was sleeping, her testimony was credible for the reasons discussed above. Moreover, no other witnesses directly disputed her testimony.  Rather, her testimony was corroborated by others' testimony that they observed Mr. Mackey sleeping.  Mr. Adolf and Mr. Culler both testified that they saw Mr. Mackey sleep on at least one occasion.  Even Special Agent Tadeo, a witness for the government, acknowledged that he observed Mr. Mackey "nodding off" and "struggling to stay awake."  J.A. 179.  As Mr. Adolf and Special Agent Tadeo explained, they spent most of the trial paying attention to the evidence in front of them rather than to Mr. Mackey, who was seated off to their side.  Mr. Culler was in their position as well. Therefore, they were not in as much of a position to observe him sleeping as Ms. Vernon was.  At the very least, their testimony that they saw him sleeping or "nodding off" supports her testimony and Mr. Ragin's assertion that Mr. Mackey slept for substantial portions of the trial.

Because he slept as evidence was presented against Mr. Ragin, Mr. Ragin's trial counsel was unable to "analyze, object, listen or in any way exercise judgment" on behalf of Mr. Ragin during critical times at trial.  *See Burdine*, 262 F.3d at 349.

16

His trial counsel was in no position to "exercise judgment, calculation and instinct, for better or worse" or "sort out what initiatives were open" as he drifted in and out of consciousness. *See Tippins*, 77 F.3d at 67. Furthermore, as he slept, he could not confer with Mr. Ragin "about the testimony or evidence adduced at trial" so that they could "together evaluate its impact[,]" nor could he "adequately test the credibility of witnesses on cross examination…." *See Javor*, 724 F.2d 831 at 834.

It does not matter that much of the testimony and evidence focused mainly on Mr. Ragin's co-defendants. Mr. Ragin and his co-defendants were charged with taking part in a criminal conspiracy. The testimony presented against his co-defendants was offered as evidence of the conspiracy in which Mr. Ragin was also allegedly involved. Mr. Ragin was prejudiced by his counsel's unconsciousness during such testimony, just as the defendant in *Russell* was prejudiced by his counsel's physical absence during such testimony, because his trial counsel was not mentally "present to keep the taint of conspiracy from spreading to" Mr. Ragin. *See Russell*, 205 F.3d at 772. Thus, the adversary process was unreliable. *See id*.

The district court relied on *Muniz v. Smith*, 647 F.3d 619 (6th Cir. 2011) in denying Mr. Ragin's motion. In *Muniz*, the Sixth Circuit held that the petitioner-defendant was not prejudiced by his counsel falling asleep at trial because he could "not establish that his trial counsel fell asleep for a substantial portion of his trial." *Muniz*, 647 F.3d at 623. The Sixth Circuit noted that "the only evidence he

17

offer[ed] to show that his counsel was asleep for any period of time is an affidavit from a juror" who alleged that his trial counsel was "asleep for an undetermined portion of a single cross-examination." *Id*. at 623-24. Mr. Ragin, by contrast, presented evidence that a juror, Ms. Vernon, witnessed his trial counsel sleep on multiple occasions throughout the trial and for periods that may have lasted as long as 30 minutes. The district court completely discounted her testimony, however, even though she was in the best position to view Mr. Ragin and his trial counsel and had no interest in the outcome of the proceedings. Moreover, as discussed below, the court relied on unsupported speculation to question the credibility of Ms. Vernon's testimony. Her testimony constituted significant evidence that Mr. Ragin's counsel slept through substantial and critical portions of the trial. Such evidence was lacking in *Muniz*. Therefore, the two cases are not comparable.

The court also noted in its order that, "Even if a presumption of prejudice applied, the Court would find that the weight of the evidence against Ragin would overcome that prejudice." J.A. 240. That, however, does not comport with the analysis set forth in *Cronic*. Moreover, the weight of the evidence is questionable when a defendant's trial counsel is not awake to challenge it.

In *Strickland*, the Supreme Court provided the following guidance:

[I]n adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of

decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

*Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069. Here, Mr. Ragin's trial counsel's sleeping caused a breakdown in the adversarial process, thus undermining confidence that Mr. Ragin received a fundamentally fair trial that produced just results.

### B.    The District Court Erroneously Considered "Facts" That Were Based On Speculation And Not Part Of The Evidence In Holding That Mr. Ragin Failed To Show That He Received Ineffective Assistance Of Counsel.

In its order, the district court noted that Ms. Vernon's testimony lacked credibility because she "may be remorseful for the severity of the sentence imposed." J.A. 239-40. Not only was there no evidence of any such remorse, there was no evidence that she was even aware of Mr. Ragin's sentence. Such a finding was clearly erroneous, and such speculation without evidence supporting it should not have been a basis for discounting her testimony. The district court's inclusion of that speculation in its analysis, therefore, casts doubt on its ultimate conclusion that Mr. Ragin did not receive ineffective assistance of counsel.

19

## **CONCLUSION**

For the reasons stated above, this Court should reverse the district court's

order dismissing and denying Mr. Ragin's § 2255 motion.

## **REQUEST FOR ORAL ARGUMENT**

The Defendant-Appellant requests that an oral argument be allowed in this case

pursuant to F.R.A.P. 34, as oral argument would most likely benefit this Court in its

understanding of the issues and arguments in support of those issues.

/s/ Matthew G. Pruden
Matthew G. Pruden
TIN, FULTON, WALKER
  & OWEN, PLLC
301 East Park Avenue
Charlotte, NC  28203
(704) 338-1220

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>4,574</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated: September 2, 2015          <u>/s/ Matthew G. Pruden</u>
                                  Matthew G. Pruden

                                  *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on September 2, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users:

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

<u>/s/ Shelly N. Gannon</u>
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
206 East Cary Street
Richmond, VA  23219